# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ALVORD INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 09-2072 |
| ) | |
| ) | |
| THE HARTFORD FINANCIAL ) | |
| SERVICES GROUP, INC. and ) | |
| TWIN CITY FIRE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants The Hartford Financial Services Group, Inc. ("Hartford") and Twin City Fire Insurance Company's ("Twin City")[1] motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim filed on April 15, 2009. (D.E. #23.) Plaintiff Alvord Investments, LLC ("Alvord") filed its response in opposition on May 15, 2009. (D.E. #25.) Defendants filed a reply on June 5, 2009 (D.E. #28), and Alvord filed a sur-reply on June 11, 2009 (D.E. #30-2). For the reasons stated herein, the Court **GRANTS** Defendants' motion, and Alvord's complaint is **DISMISSED**.

---

[1] The Court will use "Defendants" when referring to Hartford and Twin City collectively.

## I. BACKGROUND

**A. Allegations of Alvord's Complaint**[2]

Alvord, a limited liability company organized under the laws of the State of Tennessee, is the sole owner of Lenny's Franchisor, LLC ("Lenny's"), a single member Tennessee limited liability company. (D.E. #1: Pl.'s Compl. ¶ 2.) Both Alvord and Lenny's are headquartered in Memphis, Tennessee. (Id.) Hartford, a Delaware corporation, and Twin City, an Indiana corporation, both have their principal places of business in Connecticut. (Id. at 3-4.)

The case arises from a dispute between Dynamic Growth Partners ("DGP") and Lenny's.[3] (Id. at 8.) On or around May 23, 2008, DGP mailed Lenny's a draft complaint and demand for arbitration of several claims against Lenny's, including fraud in the inducement, violation of Florida's Deceptive and Unfair Trade Practices Act, violation of Florida's Franchise Act, and violation of Florida's Sale of Business Opportunities Act. (Id.) Alvord then notified Hartford of this dispute as the issuer of Alvord's Directors and Officers Liability Policy ("D&O policy").[4] (Id. at 9.)

Through e-mail correspondence on July 3, 2008, Hartford informally denied coverage for the claims made in DGP's demand. (Id. at 10.) Hartford based its denial on the D&O policy's exclusion of coverage for claims "based upon, arising from, or in any way related to any Claim made by or on behalf of any franchisee of the Company in any

---

[2] The facts recited in Section I.A of this order are taken from Alvord's complaint and are not supplemented by the facts revealed in the attachments to Defendants' motion.

[3] Alvord's complaint suggests, but does not state expressly, that DGP was not a franchisee of Alvord or Lenny's at the times relevant to this suit. (See Pl.'s Compl. ¶¶ 12, 32.) As made clearer by later filings, Alvord's position is that DGP was a franchisee at one time, but that DGP had ceased to be a franchisee by the time it made its demand of Alvord. (See Pl.'s Sur-Reply in Opp. to Defs.' Mot. to Dismiss.)

[4] The D&O policy in question, Policy No. 00 KB 0237894-07, was issued for the period October 24, 2007 to October 24, 2008. (Pl.'s Compl. ¶ 18.) The D&O policy is part of a larger "Hartford Private Choice Encore!" policy issued to Alvord. Alvord alleges that Lenny's, as a subsidiary of Alvord, qualifies as an insured entity under the D&O policy, and Defendants have not disputed this assertion. (Id. at 24.)

2

capacity." (Id. (quoting D&O policy).)  Hartford cited as an additional basis the D&O policy's exclusion for claims "based upon, arising from, or in any way related to any liability under any contract or agreement[.]"  (Id. (quoting D&O policy).)  Although Hartford indicated that a formal letter reflecting its decision would be forthcoming, Alvord did not receive such a letter.  (Id. at 11.)  On August 27, 2008, Alvord challenged Hartford's informal denial of coverage.  (Id. at 12.)  Hartford likewise failed to respond to Alvord's renewed request for coverage.  (Id. at 13.)

On September 30, 2008, DGP filed an arbitration demand and finalized complaint with the American Arbitration Association ("AAA") in Miami, Florida.  (Id. at 14.)  The gravamen of DGP's complaint is that Lenny's, a subsidiary of Alvord, made "wildly inaccurate" projections for sales, costs, and profits and that Lenny's "omitted to disclose the facts and information of which they had a duty" to disclose to DGP.  (Id. at 24-25 (quoting DGP Complaint).)  Alvord tendered this litigation to Hartford under its D&O policy, but Hartford failed to timely respond either formally or informally.  (Id. at 15-16.)  By a letter dated December 5, 2008, Hartford finally issued a formal decision declining coverage under the D&O policy for the litigation initiated by DGP.  (Id. at 17.)

Alvord filed suit against Defendants in the United States District Court for the Western District of Tennessee on February 11, 2009.  Alvord seeks a judicial declaration that Alvord was entitled to coverage for the DGP litigation under the D&O policy and further seeks damages for breach of contract, including attorney fees and other costs.  (Id. at 36-37, 42.)

**B. Exhibits Attached to Defendants' Motion**

Defendants have attached four exhibits to their motion to dismiss: (1) a copy of the relevant insurance policy in effect at the time between Alvord and Defendants; (2) a copy of the complaint DGP filed against Lenny's with the AAA; (3) a franchise agreement dated April 28, 2005 and entered into between Lenny's and a franchisee identified as a Florida corporation to be formed as a subsidiary of DGP; and (4) a franchise agreement dated March 14, 2006 and signed in the same manner as the April 28th agreement. Alvord expressly concedes that in deciding this motion the Court may consider the D&O policy and DGP's complaint with the AAA. Alvord, however, objects to the Court's consideration of the two franchisee agreements and requests that the Court exclude them from consideration on this motion.

Although a court must normally disregard matters outside the pleadings in ruling upon a motion to dismiss under Rule 12(b)(6), a document is properly considered on such a motion when it is "referred to in the complaint and . . . central to the plaintiff's claim[.]" Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)); see Yeary v. Goodwill Indus.-Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997). The Court agrees with the parties that it may consider the D&O policy and the DGP arbitration complaint, but the Court will sustain Alvord's objection to consideration of the two franchise agreements. The franchise agreements are not referenced in Alvord's complaint, nor do Alvord's claims for relief depend upon the terms of the two franchise agreements.

4

Moreover, a ruling upon Defendants' motion does not require consideration of these documents.[5]

Examination of DGP's AAA complaint in conjunction with Alvord's complaint in the instant case makes clear that the relationship between Lenny's and DGP was that of franchisor-franchisee—a fact that is implied, but not stated directly, in Alvord's complaint. According to the allegations of the DGP complaint, this relationship began with the signing of franchise agreements in early 2005 and continued until some unspecified time at which DGP decided that it had been misled by Lenny's and wished to terminate its relationship. The complaint DGP filed with the AAA on September 30, 2008 asserts various causes of action arising from DGP's entry into several franchise agreements with Lenny's between April 2005 and July 2006. The DGP complaint does not allege specifically whether the franchise agreements had been terminated by the time DGP filed its complaint.

## II. LEGAL STANDARD

Defendants primarily move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hartford individually also moves for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). The Court will therefore set forth the legal standards for each of these two Rule 12(b) motions to dismiss.

**A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled. Scheid v. Fanny Farmer

---

[5] The Court acknowledges Defendants' representation that these two franchise agreements were among the several exhibits that DGP attached to its complaint filed with the AAA. However, because the Court finds that Alvord's complaint in the instant case neither references nor relies upon these exhibits, the Court will exclude them.

5

Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R. Civ. P. 8(a)(2).  It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests.  Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]"  Twombly, 127 S. Ct. at 1965 (citation omitted).  The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge.  Twombly, 127 S. Ct. at 1968; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations made in the complaint and construes them in the light most favorable to the plaintiff.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983).  The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences.  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

6

**B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserts that the court lacks subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction may challenge the sufficiency of the complaint itself—in which case it constitutes a facial attack—or it may challenge the factual existence of subject matter jurisdiction—in which case the motion constitutes a factual attack.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  In ruling upon a facial attack, the court must take as true the allegations of the plaintiff's complaint and construe them in the light most favorable to the plaintiff, but in a factual attack, the court does not presume that the complaint's allegations are true and instead considers other evidence bearing upon the question of subject matter jurisdiction.  DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004).  When faced with a factual attack, the trial court may, at its discretion, consider affidavits and documents and even conduct a limited evidentiary hearing to resolve any disputes as to jurisdictional facts.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  The plaintiff bears the burden of proving jurisdiction on a motion to dismiss under Rule 12(b)(1).  Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986); see United Gov't Sec. Officers of Am. v. Akal Sec., Inc., 475 F. Supp. 2d 732, 736 (S.D. Ohio 2006).

**III. ANALYSIS**

**A. Interpretation of Insurance Policies under Tennessee Law**[6]

Tennessee law provides that "[i]n general, the interpretation of an insurance policy is a question of law and not fact," Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006), and is governed by the same rules as those governing interpretation of other contracts, Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, interpretation of an insurance policy requires looking to "the four corners of the instrument to ascertain its meaning as an expression of the parties' intent" and giving the words of the policy "their usual, natural, and ordinary meaning." VanBebber v. Roach, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007); see Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758, 768 (Tenn. 2006).

Where, however, the language of an insurance policy is fairly susceptible of more than one meaning and therefore ambiguous, Tennessee law directs that the ambiguity be construed against the insurer and in favor of the insured. Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993); see Naifeh, 204 S.W.3d at 768 ("When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured."); Harrell v. Minnesota Mut. Life Ins. Co., 937 S.W.2d 809, 814 (Tenn. 1996) ("Words in an insurance policy are given their common and ordinary meaning, with ambiguous language construed against the insurance company and in favor of the insured."). This is particularly true when the ambiguous language purports to limit

---

[6] Defendants argue that Tennessee law should apply to this case, and Alvord does not contest this position. From the limited record before it, the Court agrees that Tennessee law should govern Alvord's claims as the policy contains no choice of law provision, and the face of the policy evidences that Alvord obtained it through an insurance broker located in Memphis. See Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 & n.1 (Tenn. Ct. App. 1998) ("In the absence of an enforceable choice of law clause, Tennessee courts apply the substantive law of the state in which the [insurance] policy was issued and delivered.").

8

coverage. Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 773 (Tenn. 2004). Nevertheless, while a provision in an insurance policy excluding coverage should be strictly construed against the insurer, courts must honor, rather than undermine, the intent of the exclusion when its purpose is apparent. Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004); cf. Harvey v. Farmers Ins. Exchange, 286 S.W.3d 298, 302 (Tenn. Ct. App. 2008) (holding that general rule whereby exceptions, exclusions, and limitations in insurance policies are to be construed against the insurer is inapplicable where there is no ambiguity).

**B. The Franchisee Exclusion**

The Court will first consider Defendants' argument that the D&O policy's franchisee exclusion provides a proper basis for the denial of coverage to Alvord in the dispute with DGP. The franchisee exclusion reads in relevant part as follows:

> The Insurer shall not pay **Loss** for any **Claim**:
> . . .
> (M) based upon, arising from, or in any way related to any **Claim** made by or on behalf of any franchisee of the **Company** in any capacity.

(D.E. #23-3: Ex. A to Defs.' Mot. to Dismiss: "D&O Policy" at 037 (emphasis in original).) "Franchisee" is not defined anywhere in the D&O policy or in the larger policy of which the D&O policy is a part. Alvord does not dispute that DGP was, at least at one time, a franchisee of Lenny's. Instead, Alvord contends that DGP was merely a former franchisee of Lenny's by the time DGP made its demand and filed its complaint with the AAA, and Alvord asserts that the evidence will support this contention. Because, Alvord argues, the evidence will show that DGP had already closed its stores and ceased operations by the time of its demand and complaint, DGP was not a

9

"franchisee" within the meaning of the franchisee exclusion.[7]  Defendants argue that the D&O policy's use of the phrase "in any capacity" means that the exclusion extends to claims by former franchisees.  Even assuming Alvord's assertion about DGP's status as a former, rather than a current, franchisee to be true, the Court nevertheless agrees with Defendants that the phrase "franchisee . . . *in any capacity*" extends to claims brought by a former franchisee concerning the prior franchisor-franchisee relationship.

This reading is consistent with the general purpose of a D&O policy, which, broadly stated, is to "to protect directors and officers from losses resulting from claims made against them in their official capacity as directors and officers."  Nat'l Bank of Arizona v. St. Paul Fire and Marine Ins. Co., 975 P.2d 711, 714 (Ariz. Ct. App. 1999) (citing 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 131:31, at 131-36 (1997)).  Typically, a D&O policy "provides liability coverage directly to the officers and directors of a corporation for claims asserted against them for wrongful acts, errors, omissions, or breaches of duty" and then also "provides indirect coverage to the corporation for reimbursement of any monies expended to indemnify its officers and directors either by operation of state law or under the corporate bylaws."  In re First Cent. Fin. Corp., 238 B.R. 9, 13-14 (Bankr. E.D.N.Y. 1999).  A D&O policy, however, is not intended to endow the corporation itself with general liability coverage.  See Clark v. General Accident Ins. Co. PR. Ltd., 951 F. Supp. 559, 561 (D.V.I. 1997) (quoting William E. Knepper & Dan A. Bailey, Liability of Corporate Officers and Directors § 23-2 (5th ed. 1993)); see also Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1432 (9th Cir. 1995); In re Medex Reg'l Labs., LLC, 314 B.R. 716, 721 (Bankr. E.D. Tenn. 2004).

---

[7] Although Alvord argues that the evidence will show that DGP was no longer a franchisee, it does not represent that there will be evidence to show that it attached any special meaning to the language of the policy's franchisee exclusion such that only current franchisees were intended to be excluded.

Review of the D&O Policy at issue in this case reveals that Alvord's policy is clearly intended to accomplish these same ends and is not meant to grant the insured a blanket policy for any and all claims against the corporate entity itself.

Drawing a distinction based on whether or not the relationship with the franchisee has terminated thus makes little sense in terms of what objectives a D&O policy is to serve.  The Court finds this to be particularly true when the franchisee alleges that it has been misled into becoming a franchisee in the first place and seeks to formally sever its ties with the franchisor.  In such a situation, whether asserted by a current or a former franchisee, the essence of the allegations against the franchisor would be the same— namely, that the franchisor's officers and/or agents provided false and misleading information in the process of inducing the franchisee to enter into a relationship with the franchisor.  The Court sees no reason why in the case of an action by a current franchisee the D&O policy would exclude coverage, but in the case of virtually the same action by a former franchisee it would not.  Instead, in the case of an action brought by "any" franchisee, current or former, the insurer's interest is the same, and thus whether or not coverage is available would naturally be governed by the same considerations.

Finally, Alvord urges the Court to consider the fact that the common definitions section of the larger policy of which the D&O policy is a part specifically defines both "manager" and "employee" so as to include any "past, present, or future" manager or employee.  By not using the phrase "past, present, or future" in describing "franchisee" in the D&O policy, Alvord argues that "franchisee" should be understood as being limited to current franchisees only.  The Court is not persuaded by this argument because the policy sets out the meanings of "manager" and "employee" with formal multipart

11

definitions in a section defining these and other terms, but there is no definition of "franchisee" anywhere in the policy, let alone a definition with the same structure and form as those given for "manager" and "employee" in the policy's section for common definitions. Thus, it is of little significance that the modifier "past, present, or future" is not appended to "franchisee" when it appears in the D&O policy.

The Court therefore finds that the phrase "franchisee . . . in any capacity" is not ambiguous despite the fact that the parties disagree as to its meaning and the fact that the policy nowhere defines "franchisee." See Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001) (stating that parties' disagreement as to the meaning of a contractual term does not itself render it ambiguous); 11 Richard A. Lord, Williston on Contracts § 30:4 (4th ed. Supp. 2009) (stating that a term is not ambiguous simply because the contract does not define it or is silent on a particular issue). Taking the language of the franchisee exclusion in light of the surrounding circumstances, see Dunn v. Duncan, No. M2004-02216-COA-R3-CV, 2006 WL 1233046, at *3 n.4 (Tenn. Ct. App. May 8, 2006), the Court concludes that by excluding coverage for claims by a "franchisee . . . in any capacity" the D&O policy thereby excludes coverage for claims brought by former franchisees concerning the franchisor-franchisee relationship.

### C. Other Grounds for Dismissal

Defendants also move for dismissal on the basis of the D&O policy's exclusion of coverage for claims that are "based upon, arising from, or any way related to any liability under any contract or agreement[.]" Furthermore, Hartford individually argues that it is entitled to be dismissed under Rule 12(b)(1) because Twin City, not Hartford, issued Alvord's insurance policy and thus Alvord has no contractual relationship with Hartford

12

upon which it can assert a claim for relief. The Court need not address these other arguments. Finding that the D&O policy's franchisee exclusion relieved Alvord's insurer of any obligation to defend it in the dispute with DGP prevents Alvord from prevailing on any of the causes of action asserted in its complaint. Because Defendants had no duty to defend against DGP's claims, their other arguments for dismissal of Alvord's suit are moot.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED**, this the 9th day of October 2009.

                                                  s/Bernice Bouie Donald
                                                  **BERNICE BOUIE DONALD**
                                                  **UNITED STATES DISTRICT JUDGE**